IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez

Civil Action No. 17-cv-2873-WJM

JENNIFER M. AGUILAR,

    Plaintiff,

v.

SOCIAL SECURITY ADMINISTRATION,[1]

    Defendant.

## ORDER VACATING DECISION OF ADMINISTRATIVE LAW JUDGE

    This is a Social Security benefits appeal brought under 42 U.S.C. § 405(g). Plaintiff Jennifer M. Aguilar ("Aguilar") challenges the final decision of Defendant, the Social Security Administration ("Administration"), denying her application for supplemental security income. The denial was affirmed by an administrative law judge ("ALJ"), who ruled that Aguilar was not disabled within the meaning of the Social Security Act. This appeal followed.

    For the reasons set forth below, the ALJ's decision is vacated and this case is remanded to the Administration for further proceedings consistent with this order.

---

[1] The Social Security Administration no longer has a commissioner nor a lawful acting commissioner. *See* Letter from Thomas H. Armstrong, General Counsel of the Government Accountability Office, to President Donald Trump (Mar. 6, 2018), *available at* https://www.gao.gov/assets/700/690502.pdf (last accessed Dec. 17, 2018). Lacking any other alternative, the Court *sua sponte* substitutes the Social Security Administration itself as the proper defendant.

## I. BACKGROUND

Aguilar was born in 1981 and was 33 years old on the alleged onset date of June 17, 2014. (Administrative Record ("R.") [ECF Nos. 12 & 14] at 35.)[2] Her highest level of educational achievement was eighth grade. (R. at 90.) In the fifteen years preceding the alleged onset date, she worked as a customer service representative or telemarketer. (R. at 39–40, 96.)

Aguilar applied for supplemental security income on June 17, 2014.[3] She claimed that she is disabled due to chronic back pain, bipolar disorder, asthma, chronic obstructive pulmonary disease, depression, anxiety, and stress. (R. at 86.) Her application was denied on October 16, 2014. (R. at 98.) She requested and received a hearing in front of an ALJ, Jennifer Fellabaum. (R. at 33, 104.) That hearing took place on August 1, 2016. (R. at 33.) On September 8, 2016, the ALJ issued a written decision in accordance with the Administration's five-step sequential evaluation process.[4]

---

[2] Originally, Aguilar claimed an onset date of June 15, 2006. (R. at 86.) At her ALJ hearing, her counsel asked that the alleged onset date be revised to match the date she supposedly filed her application, June 17, 2014. (R. at 34.) Whether her application was actually filed on June 17, 2014 is unclear. The document generated upon filing claims she applied on July 14, 2014, but also suggests that something of significance happened on June 17, 2014. (*See* R. at 159, 160.) Nothing in this case turns on the precise application date, so the Court will assume that the application date was June 17, 2014, and will explore the discrepancy no further.

[3] *See* n.2, *supra*.

[4] The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his or her past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through steps one to four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

At step one, the ALJ found that Aguilar had not engaged in substantial gainful activity since June 17, 2014. (R. at 15.)

At step two, the ALJ found that Aguilar "has the following severe impairments: lumbar degenerative disc disease (DDD); obesity; depressive disorders, NOS; and panic disorder." (*Id.*)

At step three, the ALJ found that Aguilar's impairments, while severe, did not meet or medically equal any of the "listed" impairments in the Social Security regulations. (R. at 16.)

Before proceeding to step four, the ALJ assessed Aguilar's residual functional capacity ("RFC"). The ALJ concluded that Aguilar has the RFC

> to perform light work as defined in 20 CFR 416.967(b) except that she can occasionally bend, squat, stoop, kneel, crouch, or crawl; can never climb ladders, ropes, or scaffolds; and should not be exposed to unprotected heights or hazardous machinery. Additionally, the claimant can perform simple, routine tasks; and should have only occasional interaction with supervisors, coworkers, and the public.

(R. at 17.) Then, at step four, the ALJ concluded that Aguilar's RFC precludes her from returning to her past relevant work. (R. at 25.)

At step five, the ALJ found that Aguilar's RFC permits her to work as a mail clerk, an electronics worker, and an assembler. (R. at 26.)

Accordingly, the ALJ found that Aguilar was not entitled to Social Security benefits. (*Id.*) Aguilar appealed to the Social Security Appeals Council, which denied review. (R. at 1.) Aguilar then filed this action seeking review of the ALJ's September 8, 2016 decision. (ECF No. 1.)

3

## II. STANDARD OF REVIEW

The Court reviews the Administration's decision to determine whether substantial evidence in the record as a whole supports the factual findings and whether the correct legal standards were applied. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). Substantial evidence is the amount of relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* "It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Grogan v. Barnhart*, 399 F.3d 1257, 1261–62 (10th Cir. 2005). In reviewing the Administration's decision, the Court may neither reweigh the evidence nor substitute its judgment for that of the agency. *Salazar v. Barnhart*, 468 F.3d 615, 621 (10th Cir. 2006). "On the other hand, if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).

## III. ANALYSIS

Aguilar's challenges focus entirely on the mental limitations stated in the ALJ's RFC, and particularly the ALJ's conclusion that Aguilar "should have only occasional interaction with supervisors, coworkers, and the public." (R. at 17.) Aguilar reports experiencing debilitating panic attacks multiple times per day (*see* R. at 40–45, 51–56), and the ALJ was required to decide how those panic attacks affect her ability to interact with others at work. Aguilar believes that "occasional interaction"—with coworkers particularly—seriously overstates her abilities. "Occasional" means up to one-third of a workday. *Dictionary of Occupational Titles*, app'x C, pt. IV, *available at* https://occupationalinfo.org/appendxc_1.html (last accessed Dec. 18, 2018). At the ALJ

4

hearing, a vocational expert testified that jobs exist for a person with the ability to interact with coworkers occasionally, but that no jobs exist for the same person if he or she could interact with coworkers no more than 5% of the workday. Accordingly, the question of Aguilar's ability to interact with coworkers is central.

The ALJ had four medical source statements to draw upon and/or reconcile in reaching the conclusion that Aguilar can interact with coworkers for up to one-third of a workday. Those statements, and the ALJ's weighing of them, are as follows, in chronological order.

A state agency examining psychologist, Frederick V. Malmstrom, Ph.D., visited with Aguilar in October 2014 and opined that "she is capable of following 1 and 2-step simple and complex instructions, can cooperate with supervisors, but due to extreme anxiety is not able to cooperate with coworkers." (R. at 352.) The ALJ concluded that

> [Dr. Malmstrom's] opinions are consistent with the record and are given weight because the claimant has a history of mental health treatment, but she regularly had good mental status aside from her subjectively reported anxiety. She had increased symptoms related to situational stressors, but the claimant remained active performing activities of daily living and caring for five minor children on her own.

(R. at 22.)

A state agency reviewing psychologist, James J. Wanstrath, Ph.D., reviewed Aguilar's medical records also in October 2014 and opined that she "[c]annot work closely with supervisors, coworkers or the general public," but she "[c]an accept supervision and relate to coworkers, if contact is not frequent or prolonged." (R. at 96.) The ALJ explained her weighing of Dr. Wanstrath's opinion with precisely the same words she used to explain her weighing of Dr. Malmstrom's opinion:

5

> [Dr. Wanstrath's] opinions are consistent with the record and
> are given weight because the claimant has a history of
> mental health treatment, but she regularly had good mental
> status aside from her subjectively reported anxiety. She had
> increased symptoms related to situational stressors, but the
> claimant remained active performing activities of daily living
> and caring for five minor children on her own.

(R. at 25.)

A psychologist to whom Aguilar's counsel apparently referred her, José G. Vega, Ph.D., visited with Aguilar in June 2016 and opined that "she does not tolerate being around people. She may be able to accept direction from others but interaction may well be highly stressful for her and would impact her performance." (R. at 486.) He further opined that Aguilar had moderate to marked limitations in her ability to interact appropriately with the general public and to get along with coworkers or peers. (R. at 489.) He estimated that Aguilar would be off task more than 30% of the work week and would be absent three or more days per month. (*Id.*) The ALJ discounted Dr. Vega's opinions as inconsistent with the justifications given for approving Dr. Malmstrom's and Dr. Wanstrath's opinions:

> [Dr. Vega's] opinions are given little weight because the
> claimant has a history of mental health treatment, but she
> regularly had a good mental status aside from her
> subjectively reported anxiety. She had increased symptoms
> related to situational stressors, but the claimant remained
> active performing activities of daily living and caring for five
> minor children on her own.

(R. at 23.)

Finally, a state agency reviewing physician, Robert E. Pelc, Ph.D., had the following exchange with the ALJ at Aguilar's hearing in August 2016:

> Q. . . . Are there any functional limitations that are likely to
> arise from [Aguilar's] medically-determinable mental

6

> health impairments?
>
> A. Yeah, the functional limitations that I would cite would be as follows: she would have capacity for simple information processing, but not capacity for detailed or complex information processing on a sustained basis because of the frequency of the panic attacks [INAUDIBLE] characterized I believe that she would have difficulty in sustaining any contact with the general public, supervisors, and coworkers over an ordinary workweek and these would be the functional limitations that I would note in this record.
>
> Q. So did you say no contact at all with the general public, coworkers, and supervisors?
>
> A. Yeah, on—on a sustained basis, yes. I think that she would—because of the frequency that she's reporting the panic attacks as happening I think I heard her say four to six times per day is what I heard her say. The record says that they're happening on a daily basis. It doesn't say [INAUDIBLE] terms of those panic attacks, in my opinion, would preclude her interacting with others.

(R. at 59.) At another point in the hearing, Dr. Pelc described Aguilar's "social functioning" as having "between moderate and marked" limitations. (R. at 58.) The ALJ rejected the most restrictive of Dr. Pelc's opinions, mostly using language she had used when describing the weight given to the other psychological opinions in the record:

> [Dr. Pelc's] opinions are given some weight because they are generally supported by the record showing the claimant has a history of mental health treatment, but she regularly had good mental status aside from her subjectively reported anxiety. She had increased symptoms related to situational stressors, but the claimant remained active performing activities of daily living and caring for five minor children on her own. However, the opinions that the claimant could not interact with others and that she had up to marked limitation in social functioning are given little weight because they are not supported by the record. The claimant was regularly described as cooperative and very pleasant by her mental health providers and she did not appear to have difficulty interacting at the hearing.

7

(R. at 22.)

The ALJ's evaluation of the various medical source opinions is therefore easily summarized. The ALJ gave Dr. Malmstrom's and Dr. Wanstrath's opinions "weight," and Dr. Pelc's opinions "some weight," because:

- Aguilar has a history of mental health treatment;
- Aguilar has good mental status aside from subjectively reported anxiety;
- Aguilar has increased symptoms apparently arising from situational stressors; and
- Aguilar has remained active performing activities of daily living and caring for her five children.

The apparent inconsistency between these considerations and Dr. Vega's opinions prompted the ALJ to give his opinions "little weight." And Dr. Pelc's opinions did not deserve more than "some weight" because, in the ALJ's view, his more restrictive opinions were not supported by the record in the sense that:

- Aguilar's mental health providers regularly describe her as cooperative and pleasant; and
- Aguilar did not appear to have any difficulty interacting with those present at the ALJ hearing.

Aguilar correctly points out that, thus distilled, the ALJ's opinion is internally inconsistent, particularly in its treatment of Dr. Malmstrom's opinions. (*See* ECF No. 18 at 11–16, 19–20.)[5] Dr. Malmstrom and Dr. Wanstrath received precisely the same

---

[5] All ECF citations are to the page number in the ECF header, which does not always match the document's internal pagination.

weight for precisely the same reasons, and yet the two psychologists did not provide consistent opinions. Dr. Malmstrom declared without qualification that Aguilar "is not able to cooperate with coworkers" given her "extreme anxiety." (R. at 352.) Dr. Wanstrath said that Aguilar can "relate to coworkers, if contact is not frequent or prolonged." (R. at 96.) The ALJ's RFC most closely matches Dr. Wanstrath's opinion, even though the ALJ deemed Dr. Malmstrom's opinion equally valid.

Another inconsistency arises as to Dr. Vega. His opinion contains the most explicit limitations and is at least partially consistent with Dr. Malmstrom's opinion in that they both rule out coworker interactions. Yet the ALJ (apparently) accepted Dr. Malmstrom's opinion but rejected Dr. Vega's opinion because Dr. Malmstrom's opinion was consistent with the record and yet Dr. Vega's opinion was not. This makes little sense given the overlap between Dr. Malmstrom's and Dr. Vega's respective opinions.

The Administration responds that Dr. Malmstrom's and Dr. Wanstrath's perspective opinions are "materially consistent" and that Aguilar is "pars[ing] the ALJ's language too finely." (ECF No. 19 at 8, 9 (internal quotation marks omitted).) The Court disagrees that Dr. Malmstrom and Dr. Wanstrath produced materially consistent opinions. But even accepting the Administration's argument for present purposes, a problem remains, namely, the ALJ's repeatedly-stated reasons for giving weight to some opinions and not to others have no necessary connection to Aguilar's relevant psychological limitations. The Court will discuss each of these reasons in turn.

*"She regularly had good mental status . . . ."* This refers to Aguilar's mental health treating providers' standard evaluation at each visit, in which they rated Aguilar's

9

affect, mood, thought processes, motor control, speech, associations, fund of knowledge, judgment/insight, and appearance. (R. at 456, 460, 463, 476.) It is not clear how Aguilar's relatively normal evaluations in these areas, while in a clinical setting, has relevance to her ability to regularly work among coworkers.

*". . . aside from her subjectively reported anxiety."* This is the ALJ's only qualification on Aguilar's "good mental status." The word "subjectively" suggests that the ALJ viewed Aguilar's reports as not completely credible. Yet none of the four psychologists expressed any doubt about Aguilar's chronic anxiety. Moreover, the ALJ found Aguilar's anxiety at least credible enough to accept it as a severe impairment. (R. at 15.) Again, it is not clear what the ALJ means to say about Aguilar's believability or the supportability of any psychologist's opinion.

*"She had increased symptoms related to situational stressors . . . ."* The ALJ appears to be referring to financial and family-related difficulties. (See R. at 447, 451, 455, 459, 462, 465, 468, 475.) To the extent the ALJ means to say that Aguilar's anxiety and panic attacks would be less frequent or less severe in the absence of situational stressors, the Court has been directed to no support in the record for such a conclusion.

*". . . but the claimant remained active performing activities of daily living and caring for five minor children on her own."* The ALJ apparently means to say that Aguilar's situational stressors, although aggravating her anxiety and panic attacks, have not prevented her from maintaining her household. But the question is not whether Aguilar can maintain her household adequately. The question is her ability to interact with coworkers over the course of a regular workday and workweek in light of her

10

severe anxiety.  Nothing in the ALJ's discussion of Aguilar's activities of daily living touches on this question.  (*See* R. at 23 (describing Aguilar's ability to groom herself, care for her children, do some household chores but not others, prepare meals, drive, shop, manage her finances, and go to the park).)

The ALJ gave an additional reason for disregarding Dr. Vega's opinion specifically: *"The claimant was regularly described as cooperative and very pleasant by her mental health providers and she did not appear to have difficulty interacting at the hearing."* (R. at 22.)  As mentioned above, however, there is no necessary connection between Aguilar's ability to behave appropriately in a formal setting where she is the object of inquiry (medically or judicially) and her ability to behave appropriately among coworkers over a normal workday and workweek.

The Court appreciates that the ALJ had a range of opinions to reconcile, from Drs. Malmstrom and Vega on the most restrictive end to Dr. Wanstrath on the least restrictive end, with Dr. Pelc in the middle but leaning toward Drs. Malmstrom and Vega.  The Court does not hold that the ALJ could never have reconciled those opinions in the way that she did.  Her explanations, however, are both inconsistent and largely irrelevant to the crucial question of ability to interact with coworkers.  Remand is therefore required for further consideration.  *See, e.g.*, *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984) ("Failure to . . . provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.").

The Court *sua sponte* raises an additional issue.  The regulations regarding weighing of competing medical opinions repeatedly refer to a *relative* amount of weight ("controlling weight," "more weight," "less weight," "how much weight").  20 C.F.R.

§ 416.927(c).  Here, however, the ALJ assigned unqualified "weight" to the respective opinions of Drs. Malmstrom and Wanstrath.  From such an approach it would be reasonable to infer that the ALJ did not reject these opinions out of hand.  But her failure to specify the relative amount of weight she assigned to these provider opinions otherwise frustrates the Court's ability to adequately review the Administration's final decision.  The Court therefore strongly advises against assigning unqualified "weight" to an opinion.  The Court must be able to understand how the ALJ weighed the opinion *as compared to* other opinions and other relevant information in the record.

To the extent the Court has not addressed an argument asserted in Aguilar's papers, the Court expresses no opinion on the argument and neither party should take the Court's silence as tacit approval or disapproval.  The Court also does not intend by this opinion to suggest the result that should be reached on remand.  Rather, the Court encourages the parties and the ALJ to fully consider the evidence and all issues raised anew on remand.  *See Kepler v. Chater*, 68 F.3d 387, 391–92 (10th Cir. 1995) ("We do not dictate any result [by remanding the case].  Our remand simply assures that the correct legal standards are invoked in reaching a decision based on the facts of the case." (internal quotation marks omitted)).

## IV.  CONCLUSION

For the reasons set forth above, the Administration's decision is VACATED and this case is REMANDED to the Administration for rehearing.  The Clerk shall enter judgment accordingly and shall terminate this case.

Dated this 20th day of December, 2018.

BY THE COURT:

_____
William J. Martinez
United States District Judge